Our fifth case on the docket, the fourth case for argument, is Huon v. Mudge and others. So we'll start with you, Mr. Huon. Morning, may it please the court. My name is Minith Huon. I represent the plaintiff appellant in this case. The district court committed reversible error when it decided material facts and decided credibility of witnesses. The court essentially adopted the statement of facts or alleged statement of facts of the city of Chicago without considering the plaintiff's statement of facts and without citing to little, if any, of the deposition transcripts. The reason why I say that they cited to the city of Chicago statements of facts is because in the summary judgment motion, Madison County defendants didn't even have a separate statement of facts. The district court's explanation was that the district court didn't cite to the deposition transcripts because they were confidential. Well, what material facts do you think are disputed? That's actually what I'm getting to. Right, I would like you to get to it right away. The material facts that are disputed is, I'll give an example. The district court made a credibility determination that Amy Gabriel, who is the prosecutor in this case, who read a police report that was not... to go forward with both of these proceedings, even though there are a set of cases where there's probable cause and there's a favorable disposition for the defendant. And a lot flows from that finding. In fact, pretty much everything flows from that finding. And so maybe that would be a good place for you to focus. Why should we second-guess, for that matter, what the state courts find on probable cause? The material facts in the 2008 case that the district court found, for example, was relying on Amy Gabriel's deposition. But police officers, when they pursue investigations and arrests, do not have a duty to go out and find exculpatory evidence. They can rely on a complaining witness's account of something that happened. And then the next stages are where we try to sort out things better. They also have a duty not to look the other way. They have a duty to corroborate the witnesses. They did a lot of corroboration. They figured out where the phone was. They went to Chicago. They found corroborating material. No, they didn't. If I could just finish, they didn't. The detectives, their depositions were taken. The detectives testified that they did not corroborate by talking to the only witnesses on the scene, the neighbors. Where do you get the duty to corroborate? Why can't they rely on what they're told, what they learn from a single witness? Why do they have to go behind that? I actually cited a case that there's a duty. I don't have it in front of me, but it's in my brief. But they do have a duty to corroborate if there are witnesses on the scene. Why? Because she's giving different stories. The complaining witnesses are giving different stories. But this is just for determining probable cause. I mean, you're acting as though this is a mini-trial or something, and it's not that. I don't have the case in front of me, but I cited in my brief that there is a duty to interview corroborating witnesses. And the case cited by the defendants in those cases— the police interview three out of the five witnesses that were on the scene. And had they interviewed numbers four and five, they would have discovered exculpatory evidence or something. That would be different. But they interview who they can, and they build a file. And they can communicate to other police officers what they've found. They didn't. There were three neighbors on the scene that the police officer did not talk to. So the district court relied on the testimony of Amy Gable, the prosecutor, who said that the police corroborated by talking to two neighbors. But the police gave their depositions in this case, and the detective said, we didn't talk to the neighbors. The reason why we know that the police didn't talk to the neighbors is because if they had talked to the neighbors, it would have came out that the complaining witness gave three different stories. Well, and that's what the trial was for. You know, there's an acquittal after the first trial and a null process in light of the outcome of the first trial. I don't see what this has to do with probable cause. The cases that the defendants cite on this issue, in those cases, the officers actually corroborated with the witnesses on the scene. In this case, the police officer didn't talk to any of the witnesses on the scene. There were three neighbors on the scene that they didn't talk to. But what they have is the victim's account. They've got the 911. They've got the victim giving her account of what happened, miscounts. They have video, as I recall, from some of the bars. They've got information. That's the other thing. The information that they had that I listed during the deposition is not what the district judge looked at. The district judge looked at what Amy Gabriel said, which was different than what was taken out from, for example, the video. There's a video where the parties are sitting at a bar together. Amy Gabriel testified that they were alone, and that's what the district judge relied on. Another example, the police officer— Where do you—let's be specific. I mean, this is all just so vague. Give me a page in the district court's opinion that shows something you think is mistaken. For example, on page 4, the district court talks about the phone being registered to a John Rogers. The only phone records in the record of appeal, the phone is registered to the plaintiff. The district court just assumes that there was force in sexual contact. But in this case, the police officer detective testified that there was no force. There was little or no force, and the case— But are you saying that miscounts did not say that there was force? She said there was force. That was her report. True, false, in between, but it was her report. Her hearsay statement— It doesn't matter that it's hearsay for probable cause. She's talking to the police, and she's saying these things happen. The police gave their deposition in this case. The prosecutor gave their deposition. The district court relied on the prosecutor's testimony. The prosecutor can't get in the police report, even under past recorded recollection. I understand that the police officer can rely on the police report to create probable cause. Correct, and that's what allows all the rest of these things to happen. They get a cell phone number. They get actually what turns out to be pretty good evidence about where her phone wound up. But you're relying on this police report that has been controverted by the detective's own deposition. So what do you do with the bag of stuff in the apartment? I'm just going on what the district court relied on, and the district court relied not on the deposition of the detective. The detective testified there was little or no force. The detective testified that this was about a woman that was allegedly yelled at. The detectives couldn't identify what statements were yelled at. The district court couldn't identify what statements were yelled at. They cannot rely on Amy Gabriel's testimony because she is a prosecutor reading a report that she did not prepare. We took the deposition of the detectives. If they had asked the detectives questions about probable cause, then you can backdoor in the police report that way. That's not what happened in this case. Because the detectives' testimony in the depositions controverted the police report, the district court relied on the prosecutor. Brian McHenry, who is the Chicago Police Department in this case, gave a deposition. He was in the interrogation in both the apartment and the police department. He said he could not corroborate what the detectives put down in their police report. Of course not. He wasn't down in Madison County, but police rely on transmitted reports all the time. The whole system of criminal justice in the United States would fall apart if every police department had to redo everyone's investigations. But in the 2008 case, Brian McHenry was used to corroborate what the detectives said, but he has no personal knowledge. That's the whole point. Well, let me just advise you that you are getting into your rebuttal time, and if there's a big legal point you'd like to leave us with, this would be a good time to do it. Yeah, if I could just make a point about the 2009 case. In the 2009 case, there was no probable cause. On the date that the plaintiff was arrested, accounts had not been interviewed. None of the documents had come back from the blogs that were subpoenaed. No documents came back from the blogs that were subpoenaed. The district court just merely assumed that these blog postings were written by the plaintiff when all the defendants said, We don't know where these postings came from. The district court just assumed based on Amy Gabel's testimony. Oh, okay. I'll come back. That's safe. Counsel, when you come back, I'd like for you to give us that side on cooperation. Thank you. Is this Mr. Gilbert? Yes, ma'am. May it please the court, Mr. One. I'm John Gilbert, counsel for the Madison County defendants in this case, and our position, Judge Wood, is exactly what you articulated from the bench, that both the arrests and the prosecutions of Mr. Juan for both the 2008 and 2009 cases were supported by ample probable cause. The points that Mr. Juan makes, and I want to address the issue that he has with what he called Judge Reagan's reliance on Amy Gabriel. The evidence that is cited in the judge's decision regarding Ms. Gabriel is evidence that was elicited by Mr. Juan during her deposition when he asked her, and it's in the record, what was probable cause? She rattled off about 20 different bases for probable cause in this case, and at the time, I thought it was interesting, his follow-up question, well, is there anything else? I mean, she had responded, and Judge Reagan did not rely on that as anything other than a support for probable cause for continuing the prosecutions of Mr. Juan for the 2008 crime, the alleged crime, and the 2009 case. There's no question that these arrests and prosecutions were supported by probable cause in our judgment. The 2008 claim, as the court knows, we had the victim statement, which the officers stated on the record and in their depositions were credible to them. That enough, I would submit, provided probable cause for the 2008 arrest. But that wasn't all. We have the fake name that he used when he solicited Ms. Counts, who was the victim in this case, to meet him in St. Louis. So you also had the 9-11 tape, and I thought I remembered that there was some video from one of the bars that they visited. That's correct, Your Honor, video from the bars. And also, I think it's a misstatement to say on the appellant's behalf that the corroborating witnesses were not interviewed. One of the neighbors was interviewed, just not by the two officers whose deposition Mr. Juan took, but there was another officer, Gagan, who took the original report from the resident from whose home Ms. Counts called the Sheriff's Department after she leaps out of his car, sustains injuries consistent with him trying to keep her in the car. We have the 9-11 call, as you mentioned, Your Honor, which the officers listened to, described it as frantic. We have damnable evidence, in our view, at least for probable cause purposes, that in his apartment they find, in a garbage bag that he threw into his closet, her telephone, her purse, her wallet, her identification, her shoes. And not only that, when she leaps out of his car, he drives off to Chicago. He flees the scene. He tells her, at least for probable cause purposes, he tells her, I have a lot to lose, so I've got to go, or something like that, or don't call the police. Later on, before he was indicted by the grand jury for this 2008 crime, there's evidence that he pestered additional women. So maybe you should talk about the probable cause for the 2009 cyber-stalking thing. That seems a little more of a reach. I think that's a fair question. Here's the probable cause. He states that, and it's true, they didn't interview Ms. Counts until after he was arrested, but she had called the deputies, alerted them to this blog that was on a website. And the blog's in his name. The deputies simply downloaded the blog, and they reviewed it. Then they got a search warrant for it. And there's no question that the search warrant was for his, let's see, we've got it on the record. I'm sorry I don't have it readily available. It's all right. I'm just curious. Yeah, the search warrant was to obtain, as I recall, all of his blogs. Because once she told the police, or the Madison County deputies, that he had this blog, he took it down, which, again, creates additional probable cause that he's engaged in cyber-stalking. And the statute's important here. So you're just drawing this inference, though, from Carlinville and DD and things like that, that she's the target, so to speak. And I think something else that we may have even missed, but in reviewing these blog entries again, there are several blog entries where he says, I'm not allowed to contact you. Now, keep in mind, during this time period, his 2008 charges are pending. And if it wasn't him, who else would it be? He says in three or four places, I'm not allowed to contact you. I'm a lawyer. I have to follow the rules. To me, and perhaps the officers, and certainly to her, that may be the scariest part. Because there's even one part in those blogs where he says, I know you're reaching out to me, and I can't contact you. And I would agree with you, Judge Wood. But I think that it's a legitimate question to talk about what the probable cause was for the 2009 arrest. But I think that what the officers had, coupled with Miss Count's notification to them prior to downloading the blogs, that was enough of probable cause. And once they got the information, they took it to a grand jury. He was indicted after his arrest. And, of course, he was never prosecuted for that charge because he was acquitted of the 2008 charge. And as the evidence shows, the prosecutors decided they didn't want to run another case with the same witness. So we would respectfully request that because of the correct findings about probable cause, that the court affirm the summary judgment granted below. Thank you. Thank you, Your Honors. And we'll hear from Mr. Byrer for the city. May it please the court, I would just like to make a couple of quick points. First, regarding Mr. Huon's 2008 false arrest claim, not only was there, as Mr. Gilbert pointed out, ample probable cause, that claim was simply untimely. It was brought well after the statute of limitations had expired. And Mr. Huon's offered nothing to indicate that any conduct by the city caused him to delay filing that claim. Second, and lastly. involvement ends pretty soon after the apartment is searched and the bag is recovered and so on. Yes, it was incredibly limited. There was a suppression hearing where Officer McHenry stated that just basically, as I understand it, basically the limited extent that he was contacted that he went to the apartment, found a package with Mr. Huon's name on it, and was present during the search and portions of, it's unclear what portions of, because he said he was in and out of the room, but portions of the interrogation that followed at the police station by the Madison County officers. But that was essentially it. And that actually ties directly into my statements on the 2009 claim. That arrest, the false arrest claim, sorry, that arrest was made with a warrant. And Mr. Huon offers nothing to indicate that the Chicago police officers that executed that warrant would have had any reason to believe that the warrant was invalid. They had simply been given a warrant and executed it. And the law is quite clear that there's no basis for a false arrest claim in that circumstance. In the interest of time, unless this Court has any questions of the Chicago defendants, we'll rest on our briefs and respectfully ask that you affirm the judgment of the District Court. All right. Thank you. Anything further, Mr. Huon? I think you have about a minute. The city of Chicago's rule extended past 2009 because the officers testified that for 20 years it's been their practice that they don't look at the interstate affidavit when they execute a search warrant. So they don't know why he was being arrested. The 2009 case- Do you have a case that says that's improper police behavior? I only have a minute left. I just want to answer your other question about 2009. In the 2009 case, the testimony of the detectives and the defendants was that the prosecutor, Chris Hale, told Deanna Counts to go online and try to contact the plaintiff, and she tried to contact him three times. That was her testimony. She was stalking him for 30 days. This is a situation where he's emailing her. She goes to her website. She starts writing something. Then she goes to another website that she thinks is his, and she thinks that he's responding to her. And the District Court doesn't identify any threatening statement. The threatening statement that Counts identified is that he went to go visit Mennonites in southern Illinois. That's the threatening statement, going to visit Mennonites in southern Illinois. One last thing I want to say. There is a plethora of facts that they claim that's not supported by the death transcript. This thing about other victims. The detectives testified there were no other victims. They put in their appellate brief that the email address of Deanna Counts was found on the blog. If you look at the blog postings, her email address is not in those postings. I asked you to find that citation on cooperation. Did you find it? I know I cited it in my brief. Well, that's what you said, but that's why I asked you to find it. Okay. I found cooperation mentioned a number of times in your brief, both in the facts and in the analysis, but I didn't see a citation. I know that in the defendant's case, Johnson v. Seville, Sang Ken Kim v. City of Chicago, those all had corroboration. Just give me the page where it is. Albright v. Oliver, and the rest lacks probable cause if the detective made no effort to corroborate the witness's unsubstantial accusation. Albright v. Oliver, 975F2nd343. What page? 975F2nd343. No, what page of your brief? I'm sorry, page 31 of my brief. Of your opening? Of the opening brief, and then also. I'm sorry, what page again? Page 10 of the reply. All right. Thank you. Thank you. Sorry, I went over. All right. Thank you very much. Thanks to all counsel. We'll take the case under advisement.